UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DISTRICT

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:13-00118 |
| | ) | **Judge Sharp** |
| MICHAEL MANCIL BROWN | ) | |

## ORDER

In conjunction with his Motion to Suppress and for a Franks hearing, Defendant Michael Mancil Brown moves to unseal affidavits supporting two search warrants, one of which was used to search his computer and the other of which was obtained against "Agent B." Those affidavits, both issued in 2009, are, in Defendant's opinion, critical to his suppression motion because of what they indicate, or do not indicate, in relation to "whether the government's 2009-10 investigation showed that (1) Brown tried to communicate with Company A privately before going to the media; and (2) Brown, using an agent's user name and password, could access customer social security numbers from an agent page of Company A's website during the relevant time period." (Docket No. 36 at 21).

In its written response, the Government insists that the affidavits should remain under seal. It argues that (1) the cases upon which Defendant primarily relies – Indianapolis Star v. United States, 692 F. 3d 424, 433 (6th Cir. 2012), and United States v. Beckham, 789 F. 2d 401, 412 (6th Cir. 1986) – are inapposite because they "involved requests for access to court records made by members of the news media, not by defendants"; (2) the concern expressed in Indianapolis Star that "access to the documents might reveal the names of innocent people who never became involved in an ensuing criminal prosecution, causing them embarrassment or censure" also exists in this case; and

1

(3) while the "search warrant affidavits may be disclosed at the time of trial pursuant to the Jencks Act," Defendant "seeks to use a Franks hearing as a means to discover more information than he is permitted to discover under Rule 16 and more than is required to be disclosed by Brady and its progeny." (Docket No. 42 at 22-24).

Turning to the Government's last point first, "[t]he Sixth Circuit has never decided whether Brady protections are applicable to a suppression hearing," and "[a] number of other circuits have also avoided answering this question." United States v. Taylor, 471 F. App'x 499, 520 (6th Cir. 2012) (collecting cases). "The only two circuits that have actually ruled on this issue, however, have determined that Brady does apply to suppression hearings." Id. (citing United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993), and Smith v. Black, 904 F.2d 950, 965–66 (5th Cir. 1990)).

Whether Brady applies to suppression hearings in the Sixth Circuit is really beside the point because there is an alternative basis for unsealing the search warrants – the common law right of access to judicial documents.

In Indianapolis Star, the Sixth Circuit dealt with requests by two newspapers to obtain sealed documents that had been filed in search warrant proceedings. After "conclud[ing] that there is no First Amendment right of access to documents filed in search warrant proceedings," the court went on to write:

> In coming to this conclusion, we must keep in mind that, although we have found no First Amendment right to access, the common law right of access to judicial documents may in some situations permit access to search warrant proceedings. This may occur, however, only if the district court in its discretion, as supervisor of its own records and files, finds that the public's right to know outweighs interests of privacy in sealing a particular document.

Indianapolis Star, 692 F.3d at 433. In support of these statements, the court cited Beckham.

Beckham dealt with the news media's attempt to copy transcripts, tape recordings, and

2

documentary exhibits that were admitted as evidence in a criminal trial. The Sixth Circuit relied upon Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978), for the proposition that there is a "general, common-law right to inspect and copy public records and documents, including judicial records and documents," but that "this right is not absolute." Beckham, 789 F.2d at 409. Instead, "a court may exercise supervisory powers over the materials in its custody," and "'the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" Id. (quoting Warner Comm'n, 435 U.S. at 599).

"[T]he task of a court [i]s one 'of weighing the interests advanced by the parties in light of the public interest and the duty of the court.'" Id. (quoting Warner Comm'n, 435 U.S. at 602). "Other factors to be weighed include the court's supervisory powers, the amount of benefit to the public . . . the degree of danger to the defendants or [others], the possibility of improper motives . . . such as promoting public scandal or gratifying private spite, and any special circumstances in the particular case." Id. "None of these factors is conclusive; all the relevant facts and circumstances must be weighed together." Id. Finally, "[w]hen weighing the factors, courts are to apply a presumption in favor of access[.]" Id.; see also United States v. Napier, 436 F.3d 1133, 1137-38 (6th Cir. 2006) (discussing whether district court abused its discretion in denying defendant's request to unseal attachment to search warrant affidavit for purposes of making preliminary showing required for a Franks hearing); Media General Operations, Inc. v. Buchanan, 417 F.3d 424, 431-32 (4th Cir. 2005) (affirming denial of motion to unseal affidavit in support of search warrant where record "demonstrate[d] that the government's interest in continuing its ongoing criminal investigation outweigh[d] the petitioners' interest in having the document opened to the press and the public).

3

In this case, Defendant, who is also, of course, a member of the public, has established an interest in securing access to the affidavits supporting the 2009 search warrant. In his Motion to Suppress, Defendant has requested that the Court strike paragraphs 30 and 31 from the warrant affidavit in the present case partly because, by suggesting that Defendant could not access the social security numbers and went to the media first in regard to the prior investigation, it gave the appearance "that Brown could not possibly be a responsible whistleblower but rather was a bizarre prankster – that he was the kind of person who would try to wantonly generate a lot of media about a fictitious hacking of a computer system." (Docket No. 36 at 18). In response to Defendant's Motion to Suppress, the Government has taken the position "[i]t was defendant Brown's actions in the context of a similar scheme in 2009 involving 'Insurance Company A,' however, that provided the greatest support for the suspicions that defendant Brown was responsible for sending the letters to the offices of PricewaterhouseCoopers and to the offices of the Democratic and Republican parties in Williamson County." (Docket No. 30 at 23).

"A defendant is entitled to a hearing to challenge the validity of a search warrant if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause.'" Franks v. Delaware, 438 U.S. 154, 155–56 (1978). This is a heavy burden – one that is even heavier when the alleged falsehood is one of omission – and the defendant is required to make a "'strong preliminary showing that the affiant intended to mislead the judge by omitting information from the affidavit.'" U.S. v. Jones, 533 F. App'x 562, 567 (6th Cir. 2013) (quoting Hale v. Kart, 396 F.3d at 721, 726–27 (6th Cir. 2005)).

In his original Motion to Suppress, Defendant identified what he alleged to be one false assertion and several material omissions. It is possible that disclosure of the 2009 warrant affidavits will bolster the Defendant's argument that Agent Stephenson either intentionally withheld information from Magistrate Judge Griffin or acted in reckless disregard of the truth so that he could secure a search warrant in this case. See United States v. West, 520 F.3d 604, 611-12 (6th Cir. 2008) ("The fact that the affidavit prepared by Steger did not accurately reflect the facts known to him at the time the affidavit was sworn evinces a reckless disregard for the truth. In such circumstances we are required to analyze the affidavit 'including the omitted portions and determine whether probable cause still exists.' United States v. Atkins, 107 F.3d 1213, 1217 (6th Cir. 1997)").

On the other hand, the Government has offered no cogent reason why the 2009 search warrant affidavits should remain sealed. At a pre-Franks hearing on August 8, 2014, the Court asked counsel for the Government on several occasions why the affidavits needed to remain under seal, particularly if the names of the individuals and companies were redacted. The only explanation proffered was that Defendant was not entitled to them. This is insufficient, particularly since Defendant's own computer was the subject of one of the search warrants, and the investigations relating to the two search warrants have long since concluded. Moreover, the investigation has been the subject of at least two media stories, one of which named Company A and discussed the fall-out from the public learning about the alleged flaw in its agent page. Simply put, no explanation has been offered for the need for continued secrecy, nor has any danger, either to individuals or the public at large, been suggested.

Having under taken "the task . . . 'of weighing the interests advanced by the parties in light of the public interest and the duty of the court,'" Beckham, 789 F.2d at 409 (quoting Warner

Comm'n, 435 U.S. at 602), the Court finds that Defendant is entitled to redacted copies of the 2009 search warrant affidavits. Accordingly, within fourteen (14) days of the date of entry of this Order, the Government shall provide counsel for the Defendant with said redacted copies. Within twenty-one (21) days of receipt of those copies, Defendant shall supplement his request for a <u>Franks</u> hearing based upon what he learns from those documents or indicate his intention not to do so. The Government shall have twenty-one (21) days thereafter within which to respond to any supplemental filing made by Defendant.

It is SO ORDERED.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE